UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ORLANDO FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CV429 TCM |
| | ) | |
| TROY STEELE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of Orlando Fields (registration no. 1122240), an inmate at Potosi Correctional Center, for leave to commence this action without payment of the required filing fee [Doc. #4]. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.75. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $8.75, and an average monthly balance of $2.95. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $1.75, which is 20 percent of plaintiff's average monthly deposit.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams,* 490 U.S. 319, 328 (1989); *Denton v. Hernandez,* 112 S. Ct. 1728, 1733 (1992). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a

cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 51-52.

**The Amended Complaint**

Plaintiff Fields, along with four co-plaintiffs, filed the instant action on February 24, 2014, pursuant to 42 U.S.C. § 1983 against thirty-seven (37) officials at Potosi Correctional Center ("PCC") for alleged violations of their civil rights. *See Baker v. Steele*, 4:14CV333 JAR (E.D.Mo.). Pursuant to Fed.R.Civ.P. 20 and *Georgeoff v. Barnes*, No. 2:09CV14 ERW, 2009 WL 1405497 (E.D.Mo. May 19, 2009), the Court struck plaintiff Fields, as well as the other three co-plaintiffs from the originally-filed action, allowing the case to proceed with only the lead plaintiff in that case, Barry Baker. In its Memorandum and Order striking the co-plaintiffs from the case, the Court instructed the Clerk of Court to open new cases for each of the four co-plaintiffs, utilizing the original complaint. Plaintiff Fields filed an amended complaint in this action on April 7, 2014, naming twenty-seven (27) persons as defendants.

In an amended complaint for monetary and injunctive relief, plaintiff Fields asserts that the correctional officers at PCC violated his rights under the Eighth and Fourth Amendments of the

3

Constitution. He asserts broadly that he was subjected to cruel and unusual punishment through the conditions of his confinement.

Plaintiff asserts that in June and July 2013, defendants Clifton Bandy (Correctional Officer), Caleb Brown (Correctional Officer) Christopher Walker (Sergeant) and Unknown Bertelsmeyer (Correctional Officer) were using racial slurs against him and other inmates. Plaintiff claims that in response to defendants' continued harassment, plaintiff and other inmates began refusing to respond during count, that is, they refused to say their names or identification numbers as required by prison rules.

Plaintiff claims that on July 16, 2013, defendant Daniel Bryan (Functional Unit Manager) ordered other unnamed officers, including Unknown Wolf (Correctional Officer), to remove all of plaintiff's property from his cell (initiate "strip cell status"). Plaintiff asserts that he was left with one pair of socks, one t-shirt, one pair of underwear, and a mattress. No other items were permitted in his cell.

Plaintiff asserts that on the following day, on July 17, 2013, defendants Walker (Sergeant), Bandy (Correctional Officer), and Brown (Correctional Officer) took away plaintiff's socks and t-shirt, as well as his mattress, leaving him with just his boxers.[1]

Plaintiff asserts that from July 24, 2013 through July 26, 2013, per the orders of defendant Bryan (Functional Unit Manager), his cell was searched once per hour for a total of forty-eight hours. Plaintiff claims that he was made to kneel outside his cell, in arm and ankle chains, for several minutes, each time his cell was searched. Plaintiff claims that on one such occasion during the search, defendant Brown (Correctional Officer), performed a strip search on him,

---

[1] Plaintiff does not state when he was given his clothes and his mattress back.

"where he rubbed the side of his hand between the crack of [his] buttocks over [his] anus. . .while other officers were holding [his] arms steady." Plaintiff alleges that he reported defendant Brown's conduct to Sergeant Cooke[2] who called defendant Sammy Turntine (Nurse) to examine plaintiff during the next strip search. Plaintiff claims that during the strip search, defendant Turntine attempted to "insert her finger" in his anus in an interview room while in the presence of Sergeant Cooke and defendant Brown while making insulting remarks to plaintiff.

Plaintiff alleges that on March 28, 2014, he went to Nurse Chris about "pain in [his] bones and muscles" which had been going on since August of 2013. Plaintiff claims he was denied treatment because Nurse Chris witnessed him "stretching."

Last, plaintiff claims that he filed an Informal Resolution Request ("IRR") in August of 2013 which he believes was either destroyed by unnamed staff or misplaced in order to hinder him from accessing the Courts. He further states that he filed other IRRs that were denied or rejected at the institutional level.

**Discussion**

The amended complaint is silent as to whether defendants are being sued in their official or individual capacities. Where a "complaint is silent about the capacity in which [plaintiff] is suing defendant, [a district court must] interpret the complaint as including only official-capacity claims." *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman,* 879 F.2d 429, 431 (8th Cir. 1989). Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "[N]either

---

[2]Although plaintiff identifies Sergeant Cooke as having been in the room when these events occurred, he has not made any specific allegations of wrongdoing on behalf of Sergeant Cooke.

a State nor its officials acting in their official capacity are 'persons' under § 1983." *Id.* As a result, the amended complaint fails to state a claim upon which relief can be granted and must be dismissed.

Furthermore, the Court notes that although plaintiff has named twenty-seven (27) persons as defendants in this action, he has only made specific allegations against eight (8) defendants: Nurse Turtine; Nurse Chris Unknown; Correctional Officer Bertelsmeyer; Correctional Officer Bandy; Correctional Officer Brown; Sergeant Christopher Walker; Correctional Officer Wolf; and Functional Unit Manager Daniel Bryan.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). In the instant action, plaintiff has not set forth any facts indicating that any of the other nineteen (19) defendants were directly involved in or personally responsible for the alleged violations of his constitutional rights. As a result, the amended complaint also fails to state a claim upon which relief can be granted with respect to those nineteen defendants: Troy Steele (Warden); Jamie Crump (Asst. Warden); Cindy Griffith (Deputy Warden); Gregory Dunn (Major); Wayne Scroggins (Sergeant); Unknown Baker (Sergeant); Jason Davis (Sergeant); Willie Forbes (Sergeant); Dill Leach (Sergeant); Unknown Henson (Sergeant); Chad Cooke (Sergeant); Unknown Davidson (Correctional Officer); Unknown Coulton (Correctional Officer); Unknown Jarvis (Correctional Officer); Unknown Douglas (Correctional Officer); Unknown Stone

(Correctional Officer); Unknown Bellis (Correctional Officer); Shane Clack (Correctional Officer); and Unknown Kline (Correctional Officer). *See also*, *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983); *Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. October 23, 1998) (receiving letters or complaints does not render prison officials personally liable under § 1983).

Even if plaintiff had brought his allegations against the remaining eight (8) defendants in their individual capacity, his claims would still be subject to dismissal. For example, plaintiff complains that he was verbally harassed by defendants. The purported "verbal harassment" reported by plaintiff does not rise to the level required to establish a constitutional violation. *See, e.g., McDowell v. Jones*, 990 F.2d 433, 434 (8th Cri. 1993); *King v. Olmsted*, 117 F.3d 1065, 1067 (8th Cir. 1997) (verbal harassment actionable only if it is so brutal and wantonly cruel that it shocks the conscience, or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers from a deprivation of a constitutional right). Moreover, a mere threat to do an unconstitutional act does not create a constitutional wrong. *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir.1987) (noting that a mere naked threat to engage in an act prohibited by the Constitution is not equivalent to doing the act itself). A deprivation of "peace of mind" similarly does not support a constitutional claim. *King*, 117 F.3d at 1067.

Additionally, plaintiff's claims that he was possibly denied access to courts, assuming that his IRRs were either destroyed or lost, simply does not state a constitutional violation. As noted above, plaintiff has not named a specific defendant who allegedly acted in an unconstitutional manner with respect to this allegation. Moreover, inmates do not have a constitutionally

7

protected right to the prison grievance process. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991); *see also, Burnside v. Moser*,138 Fed.Appx. 414 (3rd Cir. 2005). And, "a state grievance procedure does not confer any substantive constitutional right upon prison inmates." *Hoover v. Watson*, 886 F.Supp. 410, 418 (D.Del.1995), aff'd 74 F.3d 1226 (3d Cir.1995). Furthermore, in order to state a denial of access to courts, plaintiff would have to assert that he suffered an actual injury to a "pending or contemplated legal claim." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996). Plaintiff has failed to do so.

Plaintiff's conclusory allegations regarding the two times he was subjected to a strip search also fail to allege a violation of his constitutional rights. "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Plaintiff has alleged that on both occasions the strip searches were conducted in private areas, removed from public view. He also has alleged that he was told that the searches were being done for security reasons, or that during such times he was specifically removed from his cell so that both his cell and his person could be searched. Generally, strip searches conducted in an area removed from public view, for legitimate safety concerns, have been upheld under the Fourth Amendment. *See Franklin v. Lockhart*, 883 F.2d 654, 656-57 (8th Cir. 1989).

Nor has plaintiff stated a claim for deliberate indifference to his medical needs. To state a claim for medical mistreatment, plaintiff must allege that he suffered objectively serious medical

needs and that defendants actually knew of but deliberately disregarded those needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle*, 429 U.S. at 106; *see also*, *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997). Plaintiff's allegations that he had muscle aches and pains that were left untreated when he was found "stretching" by Nurse Chris fail to show that plaintiff was suffering from a serious medical need which was left untreated by defendant.

Last, plaintiff has failed to allege a "conditions of confinement claim" under the Eighth Amendment. To state a claim for unconstitutional conditions of confinement under the Eighth Amendment, an inmate must show that the alleged deprivations denied him the minimal civilized measure of life's necessities and that defendants were deliberately indifferent to excessive risk to his health or safety. Plaintiff states that he was left in a cell with very few clothes and no mattress for several days. This allegation is not enough, by itself, to state a constitutional violation. *See Seltzer-Bey v. Delo,* 66 F.3d 961, 964 (8th Cir. 1995) ("Eighth Amendment does not absolutely bar placing an inmate in a cell without clothes or bedding."). Although plaintiff has also stated that he was subjected to several cell searches during a two-day period during this time, these allegations fail to show that such deprivations were "extreme" and denied plaintiff "minimal civilized measure of life's necessities." *See Hudson v. McMillian*, 112 S.Ct. 995, 999-1000 (1992) (to establish objective component of conditions-of-confinement claim, deprivation must be "extreme" and must deny plaintiff "minimal civilized measure of life's necessities").

In conclusion, based on the foregoing, plaintiff's amended complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #4] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.75 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the amended complaint because the amended complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both. *See* 28 U.S.C. § 1915(e)(2)(B).

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 22nd day of September, 2014.

/s/Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE